IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY R. & DEBRA GIBBLE, h/w, | : | |
| *Plaintiffs*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CINCINNATI INSURANCE | : | No. 14-0739 |
| COMPANIES, | : | |
| *Defendant*. | : | |

**M E M O R A N D U M**

PRATTER, J.                                                                                                       APRIL 30, 2015

Mr. Gibble alleges that on August 1, 2012, he was driving to his home in a small dump truck owned by his employer, Promark Landscaping. On the way home, his truck broke down, and he pulled over to the side of the road. While parked on the side of the road, his truck was struck by an uninsured driver. Mr. Gibble sustained severe injuries.

Mr. Gibble first filed a workers' compensation claim for his injuries. However, the workers' compensation judge found that Mr. Gibble's injuries were not sustained in the scope of his employment, as he was not furthering Promark's business at the time of the accident.

Mr. Gibble now seeks reimbursement under the insurance policy for the dump truck he was driving. Promark, Mr. Gibble's employer, held a policy on the truck through Cincinnati Insurance Company ("Cincinnati"). Cincinnati refused to pay the claim, arguing that Mr. Gibble is excluded under a provision in the policy excluding those driving the truck "without a reasonable belief that they have authority to do so."

Mr. Gibble brings a breach of contract and bad faith claim.[1] Cincinnati previously moved to dismiss Mr. Gibble's claims, arguing that they were collaterally estopped by the workers' compensation judge's decision. The Court denied the Motion to Dismiss, deciding that the question of whether Mr. Gibble reasonably believed he had the authority to drive the truck was a different question than whether he was driving the truck within the scope of his employment. The Court also denied the argument that the bad faith claims should be dismissed. Cincinnati also argued that Mr. Gibble's only basis for a bad faith claim was Cincinnati's decision not to arbitrate the dispute, and that this basis could not sustain a bad faith claim. The Court agreed that the decision not to arbitrate could not support a bad faith claim, but decided that the Complaint had successfully alleged a bad faith claim premised on Cincinnati's failure to pay Mr. Gibble's insurance claim.

Cincinnati has moved for summary judgment. The Court will grant the Motion in part and deny it in part.

I.     **LEGAL STANDARD**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the party seeking summary judgment does not bear the burden of persuasion at trial, the moving party may meet its burden at summary judgment by showing that

---

[1] His "wife," Debra Gibble, brings a loss of consortium claim. However, in their Pretrial Memorandum, Plaintiffs admitted that Mrs. Gibble is not legally married to Mr. Gibble. She is therefore withdrawing her loss of consortium claim.

2

the nonmoving party lacks sufficient evidence to create a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The court must not weigh the evidence or make credibility determinations. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). Nevertheless, the party opposing summary judgment must support each essential element of his or her opposition with concrete evidence in the record. *Celotex*, 477 U.S. at 322-23. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## II. ANALYSIS

Cincinnati has recently filed a Motion for Summary Judgment, making the following arguments: (1) Mr. Gibble has no evidence to support his bad faith claim; (2) Mr. Gibble is excluded under the Cincinnati insurance policy because he cannot establish that he had a reasonable belief that he was permitted to use the dump truck at the time of the accident; and (3) Mr. Gibble cannot collect first-party benefits because he was an uninsured owner of a registered vehicle at the time of the accident.

### a. Bad Faith Claim

Cincinnati argues that Mr. Gibble cannot prevail on his bad faith claim, as he has produced no evidence of the essential elements of a bad faith claim: (1) that Cincinnati lacked a reasonable basis for denying benefits; and (2) that Cincinnati knew or recklessly disregarded its lack of a reasonable basis. See *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir.

2004). Mr. Gibble must prove these two elements by "clear and convincing evidence." *See Polselli v. Nationwide Mut. Fire Ins. Co*, 23 F.3d 747, 750 (3d Cir. 1994).

Mr. Gibble has not produced sufficient evidence from which a reasonable jury could find in his favor on a bad faith claim. Cincinnati had a reasonable basis to exclude payment, even if that basis ultimately proves incorrect. The workers' compensation judge found that Mr. Gibble was not acting in the scope of employment at the time of his motor vehicle accident. The testimony presented during the workers' compensation proceedings, as well as other evidence, provided a reasonable basis for Cincinnati to believe that unless Mr. Gibble was acting within the scope of his employment, he was not permitted to drive the truck, and that Mr. Gibble knew this.[2] This gave Cincinnati a reasonable basis to deny coverage because Mr. Gibble appeared, arguably, to have lacked a reasonable belief that he was entitled to be driving the truck at the time of the accident. Mr. Gibble likewise does not have any evidence of the second element of a bad faith claim—that Cincinnati knew or recklessly disregarded its lack of a reasonable basis. Mr. Gibble argues that he "intends to call the adjuster as of cross examination to verify that this case was never properly investigated or evaluated," Resp. in Opp. 4-5, but such an intention is not evidence.

Especially in light of the "clear and convincing" standard by which a jury would have to find that evidence supports the claim of bad faith, Mr. Gibble's bad faith claim must be dismissed. There is insufficient evidence in the record from which a reasonable jury could conclude that Cincinnati acted in bad faith.

---

[2] For example, Mr. Gibble signed a contract stating that a "company truck will be given for company work." Mot. for Summ. J. Ex. 5. (Doc. No. 18-5).

### b. Breach of Contract Claim

Cincinnati argues that Mr. Gibble was not an insured party under the policy and therefore his breach of contract action must fail. Specifically, Cincinnati points to an exclusion in the policy which states that the policy does not apply to "[b]odily injury suffered by any person while operating or occupying a motor vehicle without reasonable belief that he or she is entitled to." Mot. for Summ. J. Ex. 4. ¶ C.3 (Doc. No. 18-4) (internal quotation marks omitted). Because Cincinnati seeks to deny coverage under an exclusion to the policy, Cincinnati bears the burden of proving that Mr. Gibble is excluded from coverage. *See Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, No. 05-281, 2011 WL 611802, at *21 (E.D. Pa. Feb. 17, 2011) *aff'd*, 687 F.3d 620 (3d Cir. 2012).

The Court finds that there is a genuine dispute of material fact here. Cincinnati argues that: (1) Mr. Gibble was told he could use his truck only for work purposes; (2) the workers' compensation judge has already decided that Mr. Gibble was not using the truck for work purposes at the time of the accident; and (3) therefore, Mr. Gibble could not have had a reasonable belief that he was entitled to be occupying the truck when the accident occurred. Mr. Gibble counters that even though he was not acting within the scope of his employment when the accident occurred, he still had a reasonable belief that he was entitled to be using the truck. As evidence, Mr. Gibble points to various statements and affidavits from ProMark employees, including from Stuart Preston, the President of ProMark, to the effect that Mr. Gibble was permitted to drive his truck to and from work for company purposes, and that there was a widespread practice among ProMark employees of driving the company trucks home.

### 1. Issue Preclusion

The Court has previously decided that the question of whether Mr. Gibble reasonably believed he had the authority to drive the truck was a different question than whether he was driving the truck within the scope of his employment, which was the question before the workers' compensation judge. Therefore, the Court rejected Cincinnati's arguments based on issue preclusion at the Motion to Dismiss stage. Cincinnati now argues, however, that the specific findings of fact of the workers' compensation judge, particularly as to whether Mr. Gibble was driving home from work at the time of the accident, should be given preclusive effect in this litigation.

"Issue preclusion bars successive litigation of 'an issue of fact or law' that 'is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment.'" *Bobby v. Bies*, 556 U.S. 825, 834 (2009) (citing Restatement (Second) of Judgments § 27 (1980)). Under Pennsylvania law, issue preclusion applies when: "(1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment." *Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50-51 (Pa. 2005).

There are two reasons why Mr. Gibble is not estopped from arguing that he was driving home from work when the accident occurred. First, the burden of persuasion has shifted from Mr. Gibble to Cincinnati—Mr. Gibble bore the burden of proof in the workers' compensation proceeding; Cincinnati bears the burden of proof here. *See* Restatement (Second) of Judgments

§ 28 (listing exceptions to the general rule of issue preclusion, including when "the burden [of persuasion] has shifted to his adversary"). As Wright & Miller put it:

> Failure of one party to carry the burden of persuasion on an issue should not establish the issue in favor of an adversary who otherwise would have the burden of persuasion on that issue in later litigation. . . . This result should not be defeated by the formal argument that if the preponderance does not lie on one side, it must lie on the other. As a purely formal matter, it is possible that the initial determination rested on a conclusion that the evidence was in exact equipoise. More importantly, actual application of the preponderance standard does not depend on any process so unrealistic as to assume that a line of exact equipoise can be drawn. A conclusion that the burden has not been carried is only a conclusion that there remains sufficient uncertainty to require that the issue not be made a basis for decision. . . .
>
> The rule that a shift in the burden of persuasion defeats preclusion should apply even if the first action went beyond a negative finding that the burden was not carried. . . . Any such determination . . . would not be necessary to decision of the first action and may be denied preclusive effect on that score. Denial of preclusion, moreover, rests on grounds deeper than the general necessity principle. However difficult it may be to justify in terms of abstract burden theory, the fact remains that direct responsibility for immediate consequences is apt to control resolution of uncertainty. A tribunal that is prepared to state that the plaintiff was negligent when nothing turns on the statement might easily make a different statement if the defendant's claim were before it for actual disposition.

§ 4422 Issue Preclusion—Different Standards of Evidence, 18 Fed. Prac. & Proc. Juris. § 4422 (2d ed.). Pennsylvania law would appear to embrace the notion that where a party bears the burden of persuasion in one proceeding, he will not be estopped from making those same claims in a later proceeding where he does not bear the burden of persuasion, as the Third Circuit Court of Appeals recently explained in a footnote:

> We note, without holding, that Pennsylvania would appear to recognize the difference-in burden exception under Restatement (Second) of Judgments § 28(4). The Pennsylvania Supreme Court has cited other provisions of Section 28 favorably. *See, e.g., Cohen v. Workers' Comp. Appeal Bd.,* 589 Pa. 498, 909 A.2d 1261, 1267 n.13, 1270–71 (2006) (declining to apply collateral estoppel for policy reasons consistent with Restatement (Second) of Judgments § 28); *Rue,* 713 A.2d at 86 (relying on Restatement (Second) of Judgments § 28(3), (5)). Moreover, the Pennsylvania Superior Court recently adopted the difference-in-burden exception. *See Weissberger v. Myers,* 90 A.3d 730, 735 (Pa.Super.Ct.2014) ("[T]he fact that

7

> the [plaintiffs] proved fraud by the preponderance of the evidence in the Bankruptcy Court does not establish that they met their burden of proving fraud by clear and convincing evidence[,] [so] the collateral estoppel doctrine is foreclosed.").

*Metropolitan Edison Co. v. Pa. Pub. Util. Comm'n*, 767 F.3d 335, 357 n.27 (3d Cir. 2014).

Second, the issue as to Mr. Gibble's purpose in driving the truck as litigated in the Workers' Compensation proceeding, is not identical to the issue here. "Identity of the issue is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000) (citing 18 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice & Procedure § 4425, at 253 (1981)). The workers' compensation judge, Judge Susan Kelley, had to determine whether Mr. Gibble was injured while "actually engaged in the furtherance of the business or affairs of the employer." Pennsylvania Workers Compensation Act § 301(c)(1). In general, injuries sustained driving to and from one's place of employment are not compensable, but several exceptions apply, most notably when either the employment contract included transportation to and from work or "special circumstances are such that the employee was furthering the business of the employer." *SEPTA v. Workmen's Compensation Appeal Board (Scott)*, 582 A.2d 421, 422 (Pa. Cmwlth. Ct. 1990). Thus, what Judge Kelley was really deciding was Mr. Gibble's purpose in driving the truck—not merely whether he was in fact driving the truck from work to home, but whether in doing so he was furthering ProMark's business.

What Judge Kelley found was that Mr. Gibble was not driving home in furtherance of ProMark's purposes or as part of his employment contract. Part of this determination was the finding that Mr. Gibble did not stay late at work, as he claimed, and then drive directly from work to home so that he could then drive directly from home to the jobsite the next morning. Judge Kelley noted inconsistencies in Mr. Gibble's testimony, a lack of evidence that he had

worked late, and the fact that Mr. Gibble was a few miles on the far side of his home from his workplace when the accident occurred (he was ostensibly "looking for gas").

However, Judge Kelley's focus was on a narrower definition of "driving home from work" than what this Court must consider here. As the Pennsylvania Superior Court has put it, "The issue of whether an employment contract covers transportation to and from a work site by now has a specific meaning to the workers' compensation specialist, which a layperson would not know. In contrast, one's obligations or duties to an employer is a broader concept than the Workers' Compensation inquiry into 'course and scope.'" *Leggett v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 844 A.2d 575, 578-79 (Pa. Super. Ct. 2004) *aff'd sub nom. Leggett v. Nat. Union Fire Ins.*, 874 A.2d 1159 (Pa. 2005). Judge Kelley's determination was limited to whether, at the time of the accident, Mr. Gibble could be considered to be "on the job." Because he stopped work at 4:30 PM and did not drive directly home from work at that time, Judge Kelley determined that he was not "on the job." *See* Apr. 25, 2014 Mem. and Order 3 ("At most, the workers' compensation judge had to decide whether Mr. Gibble was, in essence, on the job, or whether an exception to the on-the-job requirement applied because Mr. Gibble's 'employment contract included transportation to and from work.'").

Here, the essential question is whether Mr. Gibble had a reasonable belief that he was entitled to be driving the truck. Mr. Gibble is arguing that he was entitled to take the truck home so that he could drive it to the jobsite in the morning. It could well be that Mr. Gibble was permitted to drive the truck home, even if his route to home was indirect or if he was not doing so for the purpose of furthering ProMark's business. Here, "driving home from work" might mean that Mr. Gibble dropped off a colleague and then drove home (as is suggested in one of Plaintiff's exhibits), or that Mr. Gibble drove to the grocery and then drove home, or that Mr.

9

Gibble lingered at work after clocking out, chatting with his colleagues—the point being that Mr. Gibble might have been permitted (or have reasonably believed that he was permitted) to take the truck home in a broader sense than what Judge Kelley considered. *See Leggett*, 844 A.2d at 578-79 ("[O]ne's obligations or duties to an employer is a broader concept than the Workers' Compensation inquiry into 'course and scope.'").

Judge Kelley's findings of fact were focused on whether Mr. Gibble was acting in the scope of his employment and in furtherance of ProMark's business when he was driving the truck, not whether Mr. Gibble reasonably believed he was permitted to be doing so. Because these different legal standards color the lens through which the issues of fact are measured, the Court will not give preclusive effect to the determination of the workers' compensation judge's finding.

## 2. Application of the Summary Judgment Standard

Having determined that issue preclusion does not bar Mr. Gibble from arguing that he was driving the truck home from work, the Court now turns to the evidence presented by both parties and concludes that there is a question of material fact as to whether Mr. Gibble reasonably believed he was permitted to be driving the truck at the time of the accident.

"In the context of an insurance dispute in Pennsylvania, the insured bears the initial burden of proving facts that bring its claim within the policy's affirmative grant of coverage. If the insured meets its burden of proving coverage and the insurer raises a defense based on policy exclusion, the burden of establishing the applicability of that exclusion falls to the insurer." *Fry v. Phoenix Ins. Co.*, No. 12-4914, 2014 WL 4662481, at *6 (E.D. Pa. Sept. 19, 2014). The exclusion here turns on the reasonableness of Mr. Gibble's beliefs about whether he was entitled to be occupying the ProMark truck. This exclusion "is not automatically triggered by the absence

of express permission, and permissive use may be implied from a course of conduct in which the parties have mutually acquiesced." *Am. Int'l Ins. Co. v. Michlo*, No. 99-845, 2000 WL 1048464, at *1 (E.D. Pa. July 27, 2000).

Cincinnati, who bears the burden here, provides, as evidence, the contract Mr. Gibble signed that says "a company truck will be given for company purposes," as well as the statements by the Stuart Preston, President of ProMark, to the effect that he told Mr. Gibble that the truck was to be used "[p]urely for company reasons and company work only." Mot. for Summ. J. 9. Cincinnati then points to the findings of the workers' compensation judge that Mr. Gibble was not furthering the business of ProMark at the time of the accident, as well as the concession by Plaintiffs that Mr. Gibble was not in the course and scope of his employment at the time of the accident. Therefore, Cincinnati argues, since Mr. Gibble was told he could use the truck only for company purposes, and he was not within the scope of his employment at the time of the accident, then Mr. Gibble could not have had a reasonable belief that he was entitled to drive the truck.

Mr. Gibble counters with evidence that he argues demonstrates that ProMark gave him permission to drive the truck home each night from work. He points to the following question and response at Stuart Preston's deposition:

> Q: Could [Mr. Gibble] take the truck home and then use it to drive to a job site the next morning?
>
> A: Yes, for company work.

Mr. Gibble also points to this exchange at Stuart Preston's deposition:

> Q: Did Mr. Gibble drive the ProMark GMC 3500 to and from his work on a regular basis?

11

> A: Yes
>
> Q: From home?
>
> A: Yes. . . .
>
> Q: If Mr. Gibble was using the truck, driving it home because he needed to take it somewhere the next morning, would that be permissible?
>
> A: To take the truck home after work?
>
> Q: Yes.
>
> A: Yes.

Mem. in Opp. 8-9 (Doc. No. 26-1).

Mr. Gibble also points to a 2010 contract, meant to "refocus" Mr. Gibble's role at ProMark, which says that Mr. Gibble will be "assigned a company vehicle, along with fueling privileges." Mem. in Opp. 8-9. Mr. Gibble also points to affidavits from other former ProMark employees which contain statements that Mr. Gibble and other supervisors were permitted to drive the company vehicle to and from work. Finally, Mr. Gibble has himself submitted an affidavit in which he states, "I drove [ProMark's] vehicle to and from my home to work on a regular basis as I did on August 1, 2012. I was never told by anyone at my place of employment that I was not permitted to drive the truck back and forth between my home, various job sites, and the office. Therefore, based upon my continued use of the company truck . . . I had a reasonable expectation that I was permitted to use the company truck that had been assigned to me."[3] Mem. in Opp. Ex. K. ¶¶ 4-6 (Doc. No. 26-12).

---

[3] Cincinnati argues that this affidavit should be disregarded because it is "directly contrary to Plaintiff's prior testimony" that "he believed that he was permitted to use the vehicle for whatever purpose he wanted, as no one at ProMark expressly said anything to the contrary." Reply in Supp. of Summ. J. 9. However, this affidavit is not, in fact, directly contradictory to the

12

On the whole, this evidence paints a picture of Mr. Gibble having permission to drive the truck home from work, which he claims he was doing when the accident occurred. Further, the limitations on the use of the truck were somewhat vague (e.g. "a company truck will be given for company purposes"—the phrase "company purposes" could encompass far more than what would be within the scope of one's employment for purposes of a workers' compensation proceeding.). Finally, there is evidence of a widespread practice among ProMark supervisors of taking a company truck home. This is sufficient to create a genuine dispute as to the material fact of whether Mr. Gibble had a reasonable belief that he was entitled to occupy the truck when the accident occurred.

### c. Motor Vehicle Financial Responsibility Law

Cincinnati argues that Section 1714 of the Motor Vehicle Financial Responsibility Law precludes Mr. Gibble from collecting medical benefits, income loss benefits, accidental death benefits, and funeral benefits. Cincinnati argues that such benefits are "first-party benefits" that Mr. Gibble is not eligible to receive on account of a car that Mr. Gibble owns but for which he does not carry insurance. Specifically, Cincinnati points to a car that Mrs. Gibble considers to be hers, but that was purchased with Mr. and Mrs. Gibble's commingled funds and is titled in both their names. Cincinnati argues that Mr. Gibble "owns" this car but does not carry insurance on it.

The Court need not and does not address these arguments, however, because Mr. Gibble is not seeking first-party benefits from Cincinnati, but rather the benefits he would be entitled to under the uninsured motorist policy on ProMark's truck. Section 1714 does not preclude individuals from collecting benefits from uninsured motorist policies. *Swords v. Harleysville Ins. Companies*, 883 A.2d 562, 569 (Pa. 2005) ("[T]he MVFRL does not preclude owners of

---

prior statement, but rather consistent with it. If he believed he was permitted to use the truck for any purpose, he surely believed he could use it to take it to and from work.

registered but uninsured vehicles from recovering uninsured or underinsured coverage."); *Henrich v. Harleysville Ins. Companies*, 620 A.2d 1122, 1124 (Pa. 1993). Cincinnati argues that because "first-party benefits" in Section 1702 are defined as "Medical benefits, income loss benefits, accidental death benefits," Mr. Gibble is therefore precluded from recovering these benefits under any policy. Although this argument emits an aura of logic, it has been routinely rejected by the courts for over two decades. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Hampton*, 935 F.2d 578, 583 (3d Cir. 1991) ("We note that the definition of first party benefits as 'medical benefits, income loss benefits, accidental death benefits and funeral benefits' is perhaps broad enough to encompass the underinsured motorist benefits sought here. But we also recognize that the statutory scheme indicates that private uninsured and underinsured benefits are treated separately from basic liability benefits."); *Corbin v. Khosla*, 42 A.3d 254, 260 (Pa. 2012) ("[Section 1714] deprives the uninsured driver of speedy payment of medical and wage loss benefits from any first-party carrier through a direct claim against a policy for no-fault benefits. It does not, however, preclude an uninsured motorist from making a claim for economic damages in tort."); *Swords v. Harleysville Ins. Companies*, 883 A.2d 562, 569 (Pa. 2005) ("Accordingly, when an owner of a registered but uninsured vehicle is the innocent victim of an accident, he or she can sue in tort and, at the very least, recover damages for economic loss. Such a result is consistent with *Henrich,* which allowed Ms. Henrich to recover uninsured motorist coverage, which, together with underinsured coverage, merely serves to promote the recovery of damages *for innocent victims of accidents* with uninsured or underinsured drivers.") (emphasis in original); *Henrich v. Harleysville Ins. Companies*, 588 A.2d 50, 52-53 (Pa. Super. Ct. 1991) *aff'd*, 620 A.2d 1122 ( Pa. 1993) ("Therefore, since section 1714 specifically states that owners of uninsured, registered motor vehicles are precluded from recovering first party benefits, our

rules of statutory construction lead us to conclude that the legislature implicitly intended not to preclude that same class of claimants from recovering uninsured motorist benefits.").[4]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Cincinnati's Motion for Summary Judgment as to Mr. Gibble's bad faith claim and Mrs. Gibble's loss of consortium claim. The Court will deny the Motion in all other respects. An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[4] Cincinnati had also argued that Mr. Gibble was not eligible for "full-tort" recovery. When seeking damages beyond first-party benefits, as Mr. Gibble is doing here, the plaintiff's potential damages are determined by whether his insurance coverage allows him the "full tort" remedy or the "limited tort" remedy. Under the "full-tort option," Mr. Gibble is entitled to full-tort recovery, including pain and suffering and other nonmonetary damages. Cincinnati argues that because Mr. Gibble owned a vehicle that he did not hold insurance on (Mrs. Gibble's Mitsubishi), he is deemed under Pennsylvania law to have selected the "limited-tort option." However, Cincinnati has abandoned this argument, recognizing that under Pennsylvania law Mr. Gibble would be entitled to the full-tort policy held by the insurer of the car he was operating (so long as Mr. Gibble is an insured party under that policy). *See Berger v. Rinaldi*, 651 A.2d 553, 557-58 (Pa. Super. Ct. 1994) (holding that an owner of an uninsured vehicle is not restricted to the limited-tort option when he was driving his mother's car, on which he was insured through his mother's full-tort-option policy) *cited with approval in Hoffman v. Troncelliti*, 839 A.2d 1013, 1017 (Pa. 2003) (holding that the Court will "apply the tort option covering the vehicle in which the party was injured, so long as that person is an 'insured' under that policy.").